IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**CREDIT ACCEPTANCE CORPORATION**                                          **PLAINTIFF**

**VERSUS**                               **CIVIL ACTION NO. 2:10cv251KS-MTP**

**KEVIN FORTENBERRY and**
**THERESEA R. FORTENBERRY**                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Compel Arbitration **[#7]** filed on behalf of the Plaintiff. The court, having reviewed the motion, the response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the Plaintiff's motion is not well taken and should be denied. The court specifically finds as follows:

## BACKGROUND

Defendants purchased a used 2004 Toyota Camry automobile from Mississippi Motors, LLC ("Mississippi Motors") on October 29, 2007. A Retail Installment Contract ("Contract") was executed by the Defendants and provided that the purchase price of the vehicle was $12,500.00. Under the terms of the Contract, Defendants were required to make 57 monthly payments in the amount of $338.49. The Contract included an Arbitration Agreement that provided:

This Arbitration Clause describes how a Dispute (as defined below) may

be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "we" and "us" mean Seller and/or Seller's Assignee, Credit Acceptance Corporation, or their employees, agents or assignees or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract. If such third party is named as a party between You and us, "You" means the Buyer(s). A "Dispute" is any dispute, controversy or claim between You or us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract, or the purchase, sale, delivery, set-up, quality of the Vehicle, or any product or service included in this Contract. "Dispute" includes contract claims, and claims based on tort or any other legal theories. Either You or we may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes brought later in the lawsuit. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. The arbitrator shall decide whether a particular Dispute is subject to arbitration and any question as to the enforceability of all or part of this Arbitration Clause. All statutes of limitation which otherwise would apply to an action brought in court will apply in arbitration. The Federal Arbitration Act governs this Arbitration Clause. You and we understand and agree that You and we choose arbitration instead of litigation to resolve Disputes. <u>You and we voluntarily and knowingly waive any right to a jury trial.</u> You and we agree that all Disputes must be resolved on an individual basis through arbitration and that representative actions, such as class actions, are prohibited and regardless of any statements in this Arbitration Clause that state otherwise, the validity and effect of the class action prohibition may only be determined by a court and not by an arbitrator. In the event that there is a conflicting agreement to arbitrate claims or disputes related to the purchase of the Vehicle, whether executed before, at the same time, or after the Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and us.

Notwithstanding the foregoing, we retain the right to repossess the Vehicle upon your default and to exercise any power of sale under this Contract. The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies. If a demand for arbitration of any counterclaim is made, the entire Dispute shall be submitted to binding arbitration pursuant to this Arbitration Clause. If a party requests arbitration under this Contract the other party shall submit

to arbitration any claim or counterclaim which such party may have against the requesting party, whether deemed to be compulsory or permissive in law. The failure to bring such a claim or counterclaim is a waiver of, and bars, the bringing of such a claim or counterclaim in any subsequent arbitration or legal action. You and we agree that if any provision of this Arbitration Clause other than the prohibition against representative or class actions is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the provision found to be invalid or unenforceable shall be inapplicable and deemed omitted, but shall not invalidate the remaining provisions of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause.

The Arbitration Agreement is applicable to Credit Acceptance as an assignee of Mississippi Motors.

Defendants allegedly subsequently defaulted on their repayment obligations under the terms of the Contract. As a result, the subject automobile was repossessed on or about July 13, 2009. Defendants did not redeem the vehicle and after its disposition, Defendants allegedly remained indebted under the terms of the Retail Installment Contract in the principal sum of $6,825.49.

Credit Acceptance filed suit against Defendants in the Circuit Court of Covington County, Mississippi, Civil Action No. 2010-276C, on August 23, 2010, to collect the alleged deficiency. Thereafter, Defendants filed a Counter-Complaint against Credit Acceptance on September 27, 2010. The Counter-Complaint asserts claims for trespass, conversion, emotional distress, damage to credit reputation and negligent/intentional conduct. Defendants demanded an unlimited and unspecified amount in actual and punitive damages from Credit Acceptance. Thereafter, Credit Acceptance commenced the instant case pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, against Defendants seeking to compel arbitration

of their claims against Credit Acceptance.

## THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act (the "FAA") provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (1998).  Controlling case law makes it clear that the FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Southland v. Keating*, 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998).  This court recognizes that strong federal policy in support of arbitration agreements and is acutely aware of the Supreme Court's requirement "that [courts] 'rigorously enforce agreements to arbitrate.'" *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987), (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

As provided for in Section 2 of the FAA, the contract in dispute must evidence a transaction involving interstate commerce.  The Supreme Court has recognized that Congress meant to exercise the full extent of its powers under the Commerce Clause of the Constitution in enacting the Federal Arbitration Act.  The Court has held that the FAA applies to any arbitration contract as long as the contract turns out in fact to have involved interstate commerce.  *Allied-Bruce Terminex Companies, Inc. v. Dobson*, 513 U.S. 265, 130 L. Ed. 2d 753 (1995).  The parties do not dispute that the activities in this

case involve interstate commerce within the meaning of the FAA.

Once the court concludes that the matter involves interstate commerce, to determine whether the parties should be compelled to arbitrate involves a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Id.* at 258. This determination involves two additional considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* Once the court finds that the parties agreed to arbitrate, it must then determine whether any legal constraints external to the parties' agreement foreclose the arbitration of the claims involved. *Id.*

## ANALYSIS

The Defendants dispute that an arbitration agreement exists between the parties. They allege that they did not sign the agreement and that they were not informed of it. However, in the Retail Installment Contract, just above the Defendants signatures is the following:

> **ARBITRATION NOTICE:** PLEASE SEE THE REVERSE SIDE OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS CONTRACT.
>
> **ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE SET FORTH ON THE REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

In Mississippi, the courts have "embraced a 'liberal federal policy favoring arbitration agreements' and will liberally construe agreements with a presumption in

favor of arbitration." *Qualcomm Inc. v. American Wireless License Group*, LLC, 980 So. 2d 261, 268-69 (Miss. 2007) (quoting *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1054 (Miss.2004)). "In addition to establishing a strong presumption in favor of arbitration, the [Federal Arbitration] Act also limits the role of the court to determining whether an issue is arbitrable. The court's sole function is to determine whether the claim is referable to arbitration. Once that determination is made, the court may not delve further into the dispute." *Terminix Int'l*, 904 So. 2d at 1054.

In order to determine the validity of an arbitration agreement, Mississippi contract law mandates the court analyze the "four corners" of the contract and "the language the parties used in expressing their agreement. When [the] instrument is determined to be clear or unambiguous, the parties' intent must be effectuated." *Gatlin v. Sanderson Farms, Inc.*, 953 So.2d 220, 222 (¶ 3) (Miss. 2007). Further, "only generally applicable contract defenses, such as fraud, duress, or unconscionability, can be used to invalidate arbitration provisions or agreements" governed by the Federal Arbitration Act. *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 514 (¶ 11) (Miss. 2005). Upon review of the "four corners" of the arbitration agreement at issue, the court concludes that there is a valid contract.

The Defendants make an argument that the arbitration agreement is invalid as a result of fraud, duress, or unconscionability. However, they do not present any evidence of such. The Plaintiff is only required to place the arbitration agreement before the court and, if unambiguous according to its four corners, the intent therein should be effectuated.

The agreement states that it applies to "any dispute, controversy or claim

6

between You or us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract, or the purchase, sale, delivery, set-up, quality of the Vehicle, or any product or service included in this Contract." It further states that "'Dispute' includes contract claims, and claims based on tort or any other legal theories." Thus, based upon the unambiguous language of the arbitration agreement, the court concludes that there is a valid agreement between the parties to arbitrate.

The Plaintiff filed its original collection action against the Defendants in state court, in spite of the arbitration agreement. After the Defendants filed counter-claims against the Plaintiff, it then filed this action. Choosing to file an action in another forum is not prohibited by the arbitration agreement. However it certainly appears disingenuous for the Plaintiff to choose a state law forum and then when counter-sued, choose to exercise its rights under the arbitration agreement.

Concluding that this matter is governed by the FAA and recognizing that the Plaintiff chose to file first in state court, the court will determine other legal obstacles to compelling arbitration. The main issue presented is that of abstention because of the parallel state proceeding. Thus, the court will apply the appropriate abstention standards set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) as refined in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). *See Safety Nat. Cas. Corp. v. Bristol-Myers Squibb Co.* 214 F.3d 562, 564 (5th Cir. 2000). This doctrine only applies when there are parallel proceedings pending in federal and state court. *RepublicBank Dallas, Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th

Cir.1987). The Fifth Circuit has held that two cases are considered parallel if they involve the same parties and the same issues. *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 538-41 (5th Cir.2002) (overruled on other grounds, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009)).

Considerations of "wise judicial Administration" provide discretion for the federal court to abstain or stay exercise of its jurisdiction when there are "parallel" state court proceedings. Indeed, the concept rests on idea of promoting a "conservation of judicial resources," avoiding duplicative litigation, and discouraging forum shopping. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246, and *St. Paul Insurance Company v. Trejo*, 39 F.3d 585 (5th Cir. 1994).

Under the *Colorado River* doctrine, this court may abstain from hearing a case in only "exceptional circumstances." *See Kelly Inv., Inc. v. Cont'l Common Corp.,* 315 F.3d 494, 497 (5th Cir.2002). There are six factors which have been developed from *Colorado River* and its progeny to assist the court in determining if exceptional circumstances exist so as to allow the court to abstain from hearing a particular action. Those six factors are: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent forum; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Stewart v. Western Heritage Ins. Co.* 438 F.3d 488, 491 (5th Cir. 2006); *see Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236; *Moses H. Cone*, 460 U.S. at 23, 103 S.Ct. 927.

However, "the decision whether to dismiss a federal action because of parallel

state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927; Further, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236.  It has been held that Congress' intent in passing the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22, 103 S.Ct. 927.  To that end, "[a]llowing a federal court to order arbitration, even where a state court may construe an arbitration clause differently, is fully consistent with this established congressional intent." *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384 (5th Cir. 2006).

As to factor one, assumption by either state or federal court over a res, there is no property at issue so this factor is neutral.  As to factor two, relative inconvenience of the forum, the state forum, Covington County is only a few miles distant from this court, so this factor is neutral.

Factor three, avoidance of piecemeal litigation, is of serious concern to this court. The Plaintiff chose to file first in state court to collect an alleged deficiency and then when counter-sued, filed here to impose the arbitration agreement on the Defendants. It is incongruous to this court to see the state court proceedings continue on the deficiency issue and force the Defendants into arbitration on their counter-claims related to the alleged wrongful repossession and disposal of the subject automobile which ultimately led to the alleged deficiency.  This factor strongly favors abstention.

Factor four, order in which jurisdiction was obtained by the concurrent forum,

favors abstention as the Plaintiff chose to file in state court first. Credit Acceptance asserts that it had no opportunity to compel arbitration before the Defendants filed the Counter-Complaint on September 28, 2010. That reasoning is contrary to the wording of the arbitration agreement. The agreement defines dispute, in part, as "arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract." The collection of a deficiency is certainly a dispute arising out of the contract, and, under the strict terms of the agreement, arbitrable. The fact that the Plaintiff chose litigation instead of arbitration weighs heavily in favor of abstention.

      Factor five, extent federal law provides the rules of decision on the merits, also favors abstention as federal law has no role in the merits of this case. It is strictly controlled by state *stare decisis*.

      Finally, as to factor six, adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction (i.e. the Plaintiff), the court finds that the Plaintiff is the one who first invoked the state forum in lieu of pressing its rights under the arbitration agreement in this court. It is easily concluded that the state forum is adequate to protect all of the rights of the parties, thus this factor favors abstention.

      After a careful weighing of the *Colorado River* factors, the court concludes that it should exercise its discretion and abstain in this matter and defer to the state court proceedings for resolution of all issues between the parties.

      IT IS THEREFORE ORDERED AND ADJUDGED that the Plaintiff's Motion to Compel Arbitration **[#7]** is denied and that this matter is dismissed and that all other pending motions are denied as moot.

SO ORDERED AND ADJUDGED this the 26th day of January, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE