IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**CREDIT ACCEPTANCE CORPORATION**                               **PLAINTIFF**

**VERSUS**                                 **CIVIL ACTION NO. 2:10cv251-KS-MTP**

**KEVIN FORTENBERRY and**
**THERESEA R. FORTENBERRY**                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on remand from the United States Court of Appeals for the Fifth Circuit. *See Credit Acceptance Corp. v. Fortenberry*, 453 Fed. Appx. 483 (5th Cir. 2011). In *Credit Acceptance*, the Fifth Circuit reviewed this Court's decision to abstain from compelling arbitration of Kevin Fortenberry and Theresea R. Fortenberry's counterclaims asserted against Credit Acceptance Corporation ("Credit Acceptance") in a lawsuit filed by Credit Acceptance in the Circuit Court of Covington County, Mississippi.[1] This Court's ruling rested "on considerations of '[w]ise judicial administration,'" as between the state court lawsuit and this action pursuant to the abstention doctrine provided by *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). The Court was particularly concerned with the danger for "piecemeal litigation," which would have

---

[1] Credit Acceptance initially brought suit against the Fortenberrys in state court seeking debt purportedly owed under a Retail Installment Contract (the "Contract"). (*See* Complaint for Debt [5-1].) After the Fortenberrys filed counterclaims in the state court proceeding, Credit Acceptance initiated this action. (*See* Complaint [1].) Credit Acceptance's federal complaint principally requests that this Court compel the Fortenberrys to arbitrate their claims against Credit Acceptance pursuant to an arbitration provision in the Contract. (*See* Complaint [1] at p. 7.) Only in the alternative does Credit Acceptance request a stay of the state court lawsuit. (*See* Complaint [1] at p. 7.)

resulted from compelling the state court counterclaims to arbitration while allowing Credit Acceptance to continue to prosecute its claims against the Fortenberrys in the state court action.  After a careful weighing of the "piecemeal litigation" and other *Colorado River* abstention factors, this Court ruled "that it should exercise its discretion and abstain in this matter and defer to the state court proceedings for resolution of all issues between the parties."  (Memorandum Opinion and Order [15] at p. 10.)

On appeal, the Fifth Circuit noted that Credit Acceptance's motion in this Court sought "arbitration only on the [Fortenberrys' state court] counterclaims."  *Credit Acceptance*, 453 Fed. Appx. at 484.  "Credit Acceptance's position was clearly otherwise by the time of oral argument."  *Id.*  There, it stated that the entirety of the dispute, including its claims against the Fortenberrys, should be arbitrated.  *Id.*  The Fifth Circuit found abstention inappropriate because Credit Acceptance had conceded "that the entirety of the dispute should be sent to arbitration, a position it did not clearly take – if at all – before the district court."  *Id.* at 485.  The Fifth Circuit further found no reason "to decide whether the district court was correct to abstain based on the arguments that were earlier being made."  *Id.*  Thus, this Court's abstention decision was vacated and the case was remanded "for consideration of whether an order compelling arbitration on the entire dispute is appropriate."  *Id.*

For the reasons provided below, this Court finds that the entirety of the dispute between Credit Acceptance and the Fortenberrys should be compelled to arbitration.

## I.  FACTUAL AND PROCEDURAL HISTORY

This Court's January 26, 2011 Memorandum Opinion and Order [15] adequately details the history of this dispute.  Therefore, the Court adopts and incorporates by

reference the "Background" section of its prior Order [15].  The appeal from the Order [15] is detailed above.

On July 26, 2012, a telephonic status conference was held between the Court and counsel for the parties.  Counsel advised that a dispute still existed as to the arbitrability of the claims pending in the state court action.  Neither party requested further briefing.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

As an initial matter, the Court will consider whether it has jurisdiction to compel arbitration.  The Complaint [1] seeks an order compelling arbitration under 9 U.S.C. § 4.  Suits filed under § 4 require an independent basis for federal subject matter jurisdiction.  *See Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001) ("A party may obtain relief in federal court under the FAA only when the underlying civil action would otherwise be subject to the court's federal question or diversity jurisdiction.").  The Complaint alleges that jurisdiction exists under 28 U.S.C. §§ 1331 and 1332(a)(1).  Section 1331 is inapplicable because § 4 does not create federal question jurisdiction and because a federal question does not otherwise appear on the face of the complaint.  However, jurisdiction lies under § 1332.

There are two basic requirements under § 1332 applicable to this action:  1) the parties must be citizens of different states; and 2) the amount in controversy, exclusive of interest and costs, must exceed the sum or value of $75,000.  Credit Acceptance is a citizen of Michigan and the Fortenberrys are citizens of Mississippi.  (*See* Complaint [1] at ¶¶ 1-2.)  Thus, the first requirement under § 1332 is met.

"[T]he amount in controversy in a motion to compel arbitration is the amount of the potential award in the underlying arbitration proceeding." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996). Credit Acceptance's Motion to Compel Arbitration seeks an order compelling the Fortenberrys to arbitrate their state court counterclaims. The Fortenberrys' state court Counter-Complaint requests, inter alia, punitive damages and damages for mental and physical pain and suffering. (*See* Counter-Complaint [1-2] at p. 6.) "[F]ederal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages is deemed to exceed the federal jurisdictional minimum." *Sun Life Assur. Co. v. Fairley*, 485 F. Supp. 2d 731, 735 (S.D. Miss. 2007) (citing *Brasell v. Unumprovident Corp.*, 2001 WL 1530342, at *2 (N.D. Miss. Oct. 25, 2001) (citing *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1255 (5th Cir. 1998); *Marcel v. Pool Co.*, 5 F.3d 81, 84-85 (5th Cir. 1993); *Allstate Ins. Co. v. Hilbun*, 692 F. Supp. 698, 701 (S.D. Miss. 1988)). The Court finds that § 1332(a)'s amount in controversy requirement is met and that diversity jurisdiction exists given the damages sought by the Fortenberrys in the state court action. *Cf. Mariner Health Care, Inc. v. Ferguson*, No. 4:04cv245, 2006 WL 1851250, at *2 (N.D. Miss. June 30, 2006) (exercising jurisdiction over a motion to compel arbitration where punitive damages and damages for emotional injury were sought in the underlying state court action).

B.  **The Federal Arbitration Act**

The Federal Arbitration Act (the "FAA") provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Controlling case law makes it clear that the FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Southland v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1983); *Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998). This Court recognizes that strong federal policy in support of arbitration agreements and is acutely aware of the Supreme Court's requirement that courts "'rigorously enforce agreements to arbitrate.'" *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)).

As provided for in Section 2 of the FAA, the contract in dispute must evidence a transaction involving interstate commerce. The Supreme Court has recognized that Congress meant to exercise the full extent of its powers under the Commerce Clause of the Constitution in enacting the FAA. The Court has held that the FAA applies to any arbitration contract as long as the contract turns out in fact to have involved interstate commerce. *See Allied-Bruce Terminex Companies, Inc. v. Dobson*, 513 U.S. 265, 278, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). The parties do not dispute that the activities in this case involve interstate commerce within the meaning of the FAA.

Once the court concludes that the matter involves interstate commerce, to determine whether the parties should be compelled to arbitrate involves a two-step inquiry. *Webb*, 89 F.3d at 257-58. First, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Id*. at 258. This determination involves two additional considerations: (1) whether there is a valid agreement to arbitrate between

the parties; and (2) whether the dispute in question falls within the scope of that agreement.  *Id.*  Once the court finds that the parties agreed to arbitrate, it must determine whether any legal constraints external to the parties' agreement foreclose the arbitration of the claims involved.  *Id.*

    **C.**    **The FAA Applied to the Parties' Claims**

        **1.**    **The Parties Agreed to Arbitrate the Subject Dispute**

            **a.**    **There is a Valid Arbitration Agreement Between the Parties**

This Court previously found that a valid arbitration agreement existed between the parties.  (*See* Order [15] at p. 7.)  In doing so, the Court rejected the Fortenberrys' unsubstantiated allegations that the arbitration agreement was invalid as a result of fraud or unconscionability.  (*See* Order [15] at p. 6.)  The Fortenberrys have not presented any evidence or further arguments in support of the Court altering its prior finding of a valid arbitration agreement.  However, for the sake of completeness, the Court will again consider the Fortenberrys' arguments in opposition to the validity of the subject agreement.

*Fraud*

The Fortenberrys assert "that the Arbitration Agreement is void and of no force and effect in that it was obtained by fraud . . . ."  (Answer [5] at ¶ 10).  "Two essential elements of establishing fraud, which must be shown by clear and convincing evidence, are (1) a representation and (2) its falsity."  *Pacific Life Ins. Co. v. Heath*, 370 F. Supp. 2d 539, 543 (S.D. Miss. 2005) (citing *Mabus v. St. James Episcopal Church*,

6

884 So. 2d 747, 762 (Miss. 2004)).  The Fortenberrys have failed to identify any representations, false or otherwise, associated with the procurement of the Contract containing the arbitration provision.  Thus, the Court finds the Fortenberrys' fraud contention to be without merit.  *Cf. id.* at 544 (rejecting argument that arbitration agreement was procured by fraud in the absence of proof of any false representation); *Bell v. Koch Foods of Miss., LLC*, No. 3:08cv697, 2009 WL 1259054, at *5 (S.D. Miss. May 5, 2009) (same), *aff'd*, 358 Fed. Appx. 498 (5th Cir. 2009).

*Unconscionability*

The Fortenberrys allege that the arbitration agreement is procedurally and substantively unconscionable.  (*See* Answer [5] at ¶ 6.)  The apparent basis for this contention is that the arbitration provision in the Contract "was not pointed out or explained to them in any way." (*See* Answer [5] at ¶ 6.)  The Fortenberrys do not contest the validity of their signatures appearing on the Contract containing the arbitration provision.  (*See* Contract [1-1].)

Under these circumstances, the Court rejects the Defendants' unconscionability argument.  An individual's failure to inform himself of what he signs "does not make the agreement unconscionable or unenforceable."  *Smith v. Equifirst Corp.*, 117 F. Supp. 2d 557, 565 (S.D. Miss. 2000).  To allow a party to admit that he signed a contract "but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." *Busching v. Griffin*, 542 So. 2d 860, 865 (Miss. 1989) (citation omitted).  The Fortenberrys were responsible for reading the Contract they signed and the absence of any oral explanation to them of the arbitration provision in the Contract does not void its

7

enforcement.  *Cf. Voyager Life Ins. Co. v. Caldwell*, 353 F. Supp. 2d 748, 759 (S.D. Miss. 2005) (finding an arbitration agreement enforceable despite Defendants' complaint "that Plaintiff did not orally explain the arbitration agreement to them"); *Smith*, 117 F. Supp. 2d at 565 (rejecting unconscionability argument where the plaintiffs stated "that the agreement was not explained to them").  Moreover, the Fortenberrys do not contend that they were rushed into signing the Contract or that they were precluded from asking questions about the Contract.  The absence of such circumstances weighs against any finding of procedural unconscionability.  *See Pacific Life Ins. Co.*, 370 F. Supp. 2d at 545.

Substantive unconscionability exists when an arbitration agreement is determined to be oppressive, i.e., when the agreement is so one-sided that "one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach."  *Green Tree Servicing, LLC v. Stephens*, 1:07cv1103, 2008 WL 1925174, at *6 (S.D. Miss. Apr. 29, 2008) (citing *East Ford, Inc. Taylor*, 826 So. 2d 709, 714 (Miss. 2002); *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521 (Miss. 2005)).  The Court's review of the subject arbitration agreement does not reveal terms or conditions that are so one-sided or oppressive as to give rise to a finding of substantive unconscionability.

*The Unavailability of the National Arbitration Forum ("NAF")*

The Fortenberrys also contend that the arbitration agreement is unenforceable because the agreement identifies the NAF as the arbitrator and the NAF is no longer handling consumer arbitration claims.  (*See* Response to Motion to Compel [9] at pp. 2-3.)  The Fortenberrys rely upon a 2009 opinion from the Mississippi Supreme Court in

support of this argument.  *See Covenant Health & Rehab. v. Moulds*, 14 So. 3d 695 (Miss. 2009).  In *Moulds*, the Mississippi Supreme Court refused to enforce an arbitration agreement in a nursing home admissions agreement that designated the American Arbitration Association ("AAA") as the administrator for the arbitration.  14 So. 3d at 709 (¶ 45).  The AAA did not accept matters involving individual patients without a post-dispute arbitration agreement.  *Id.* at 706 (¶ 36).  Since there was no post-dispute agreement between the parties, the "court decline[d] to order the contract rewritten and decline[d] to order the lower court to pick a forum."  *Id.* at 709 (¶ 45).

*Moulds* is inapplicable to this dispute.  Unlike the arbitration provision at issue in *Moulds*, which only designated one arbitration organization, the subject agreement provides:  "You or we may elect to arbitrate under the rules and procedures of either the National Arbitration Forum **or** the American Arbitration Association . . . ."  (Contract [1-1] at p. 2) (emphasis added).  The unavailability of the NAF for the arbitration of this matter does not require the Court to rewrite the arbitration provision since the parties may still arbitrate under the AAA's rules and procedures.[2]  Thus, Plaintiffs' reliance on *Moulds* is not well taken and the unavailability of the NAF does not affect the validity of the arbitration agreement.  *See Sherrer v. Covenant Health & Rehab.*, No. 1:11cv296, 2012 WL 1067910, at *6 (S.D. Miss. Mar. 29, 2012) (distinguishing *Moulds* and enforcing an arbitration agreement that allowed for an alternate organization to conduct the arbitration).

The arbitration agreement between Credit Acceptance and the Fortenberrys

---

[2] No showing has been made that the AAA requires post-dispute arbitration agreements beyond healthcare matters involving individual patients.

remains valid.

### b. The Dispute Falls Within the Scope of the Arbitration Agreement

"'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).  The arbitration agreement defines arbitrable disputes as follows:

> A "Dispute" is any dispute, controversy or claim between You or us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract, or the purchase, sale, delivery, set-up, quality of the Vehicle, or any product or service included in this Contract. "Dispute" includes contract claims, and claims based on tort or any other legal theories. . . .  The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any counterclaim asserted in any such action, and including those controversies or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies.

(*See* Contract [1-1] at p. 2.)  Credit Acceptance's claim for debt owed under the Contract and the Fortenberrys' tort counterclaims arising from Credit Acceptance's efforts to collect on the debt are disputes within the scope of this broad arbitration provision.

Given the preceding determinations, the Court concludes that Credit Acceptance and the Fortenberrys agreed to arbitrate the dispute in question.

### 2. There Are No Legal Constraints External to the Parties' Agreement that Foreclose Arbitration

Having considered and rejected Defendants' contract-based and other defenses

10

to arbitration, the Court finds no legal constraints external to the parties' agreement that foreclose arbitration.

### III.  CONCLUSION

All the disputes between Credit Acceptance and the Fortenberrys pending in the underlying state court action are subject to arbitration and should be arbitrated pursuant to the terms of the arbitration provision contained in the Contract.

IT IS THEREFORE ORDERED AND ADJUDGED that the parties are ordered to submit all disputes between them to arbitration in conformity with the arbitration agreement.

IT IS FURTHER ORDERED AND ADJUDGED that this matter is dismissed subject to reopening only in the event it becomes necessary to enforce the ultimate decision of the arbitrator.

SO ORDERED AND ADJUDGED this the 30th day of July, 2012.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE